1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    AURA SIHUIL-PEREZ DE PEREZ,                No. 1:25-cv-01540-DAD-CSK (HC)

12                        Petitioner,

13           v.                                  ORDER GRANTING PETITIONER'S *EX
                                                 PARTE* MOTION FOR TEMPORARY
14    SERGIO ALBARRAN, et al.,                   RESTRAINING ORDER

15                        Respondents.
                                                 (Doc. No. 3)
16

17

18           This matter is before the court on petitioner's *ex parte* motion for temporary restraining

19    order filed on November 10, 2025. (Doc. No. 3.) For the reasons explained below, the court will

20    grant petitioner's *ex parte* motion for temporary restraining order.

21                                          **BACKGROUND**

22           On November 10, 2025, petitioner Aura Sihuil-Perez de Perez filed a petition for writ of

23    *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging her detention by United States

24    Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Petitioner de Perez asserts the

25    following two claims in that petition: (1) deprivation of substantive due process via detention in

26    violation of the Fifth Amendment; and (2) deprivation of procedural due process via detention in

27    violation of the Fifth Amendment. (*Id.* at ¶¶ 55–64.) In support of the pending motion for

28    temporary restraining order, petitioner has presented evidence of the following.

                                                    1

Petitioner fled Guatemala based on persecution and on October 25, 2018 sought asylum and withholding of removal at the United States border. (Doc. No. 3-1 at ¶ 4.) Petitioner was detained. On October 28, 2018, a Border Patrol agent completed a Form I-831 Record of Deportable/Inadmissible Alien for petitioner and noted in that form that petitioner had no prior immigration or criminal history. (*Id.* at ¶ 5.) On October 29, 2018, a supervisory detention and deportation officer in a Form I-220A determined that petitioner should be released on her own recognizance pursuant to Immigration and Nationality Act ("INA") § 236 because she was neither a danger nor a flight risk. (*Id.* at ¶ 6.) On some date between October 30, 2018 and December 31, 2019, petitioner was enrolled in the Intensive Supervision Appearance Program and was required to wear an electronic ankle monitor. (*Id.* at ¶ 7.) Petitioner complied with the terms of that program and had the ankle monitor removed in 2021. (*Id.* at ¶ 8.) Petitioner has since continued to pursue her applications for relief from removal, including by appearing at master calendar hearings and individual hearing dates before an immigration judge at the San Francisco Immigration Court, as well as fully complying with her in-person check-in requirements with ICE and the Department of Homeland Security. (*Id.* at ¶¶ 9–11.) However, due to petitioner's indigent status, she was unable to pay her cellphone bill and at times believes that she may have missed calls from ICE agents to schedule check-ins. (*Id.* at ¶ 14.) On October 27, 2025, petitioner appeared for an in-person check-in at an ICE office in San Francisco where she was detained. (*Id.* at ¶ 16.)

On November 10, 2025, petitioner filed the pending motion for temporary restraining order. (Doc. No. 3.) In that motion, petitioner requests that the court order her immediate release from custody, enjoin respondents from re-detaining her absent notice and a hearing before an immigration judge, and enjoin respondents from transferring her out of the Eastern District of

/////

/////

/////

/////

/////

2

California or removing her until these habeas proceedings have concluded.[1]  (*Id.* at 15.)  On November 12, 2025, the court directed petitioner's counsel to serve respondents with a copy of the petition, the motion for temporary restraining order, and accompanying papers, and set a briefing schedule on the pending motion.  (Doc. No. 9.)  On November 13, 2025, respondents filed a single-paragraph opposition to the pending motion.  (Doc. No. 11.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation

---

[1]  Petitioner provides no argument in her motion for temporary restraining order regarding whether the court is authorized to enjoin her removal to another country "until these habeas proceedings have concluded."  (Doc. No. 3 at 15.)  It appears from petitioner's allegations that she is awaiting a decision from the Board of Immigration Appeals regarding a removal order.  (Doc. No. 1 at ¶ 47.)  Accordingly, it does not appear to the court that petitioner is currently subject to a final removal order and the court cannot enjoin ongoing removal proceedings.  *See Maxwell v. Nielsen*, No. 2:14-cv-02772-TLN-AC (PS), 2018 WL 6304886, at *7 (E.D. Cal. Dec. 3, 2018) ("[T]he district court lacks authority to intervene in ongoing removal proceedings."), *report and recommendation adopted in part sub nom.*, *Maxwell v. Holder*, 2018 WL 6831133 (E.D. Cal. Dec. 28, 2018).  Accordingly, the court will deny petitioner's request for an order restraining respondents from removing petitioner from the country without prejudice.

3

1  omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v.*

2  *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.*

3  *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than

4  merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*

5  immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an

6  injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

7  plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

8        The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*

9  *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of

10  demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that

11  "serious questions going to the merits were raised."  *All. for Wild Rockies*, 632 F.3d at 1131.

12  **DISCUSSION**

13  **A.**    **Likelihood of Success on the Merits**

14        Petitioner argues that she is likely to prevail on her claim that her re-detention on October

15  27, 2025, was unlawful because procedural due process requires that she be provided with the

16  opportunity to contest her re-detention before a neutral decision-maker.  (Doc. No. 3 at 7–12.)

17  Respondents state only in conclusory fashion that "[p]etitioner does not meet her burden to show

18  a basis for a TRO.  Petitioner is admittedly an alien who entered the United States illegally and

19  was released on an order of recognizance.  She can then be re-detained, at least temporarily, for

20  any reason."  (Doc. No. 11 at 1.)

21        Title 8 U.S.C. § 1226(a) "sets out the 'default rule' for [detention of] noncitizens already

22  present in the country."  *Lepe v. Andrews*, — F. Supp. 3d —, No. 1:25-cv-01163-KES-SKO

23  (HC), 2025 WL 2716910, at *3 (E.D. Cal. Sept. 23, 2025) (quoting *Jennings v. Rodriguez*, 583

24  U.S. 281, 289 (2018)).  Section 1226(a) provides that "an alien may be arrested and detained

25  pending a decision on whether the alien is to be removed from the United States. . . . [T]he

26  Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on

27  [bond or conditional parole]."  8 U.S.C. § 1226(a).  The § 1226(a) framework is discretionary and

28  requires that "[a]n immigration officer make[] the initial determination to either detain or release

4

the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge." *Lepe*, 2025 WL 2716910, at *3. There is no dispute in this action as to whether § 1226 applies. (Doc. Nos. 3 at 11; 11 at 1.) Here, as discussed above, petitioner was released upon the initial immigration officer's determination that she posed neither a danger to the community or a flight risk. As other courts have noted, "[w]here the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (citing *Seravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. "Courts analyze procedural due process claims in two steps: [T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Respondents appear to contend that there is no liberty interest at issue here because the statutory framework does not circumscribe the reasons for re-detention. (Doc. No. 11 at 1.) This is unpersuasive. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1971)); *see also*

1   *Valencia Zapata v. Kaiser*, — F. Supp. 3d —, No. 25-cv-07492-RFL, 2025 WL 2741654, at *6

2   (N.D. Cal. Sept. 26, 2025).  "Accordingly, a noncitizen released from custody pending removal

3   proceedings has a protected liberty interest in remaining out of custody[]" even where an

4   immigration official "elected to release" a petitioner on their own recognizance.  *Salcedo Aceros*,

5   2025 WL 2637503, at *6–7; *see also Polo v. Chestnut*, No. 1:25-cv-01342-JLT-HBK, 2025 WL

6   2959346 (E.D. Cal. Oct. 17, 2025) (collecting cases holding that an individual released from

7   immigration detention has a protected liberty interest in continued release).  Therefore, the court

8   concludes that petitioner has a protected liberty interest in her continued release.

9          "Due process 'is a flexible concept that varies with the particular situation.'"  *Singh v.*

10  *Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *6 (E.D. Cal. July 11,

11  2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).  The Supreme Court has identified

12  three factors that the court must consider in determining what process is constitutionally required:

13  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous

14  deprivation of such interest through the procedures used, and the probable value, if any, of

15  additional or substitute procedural safeguards;" and (3) "the Government's interest, including the

16  function involved and the fiscal and administrative burdens that the additional or substitute

17  procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

18         As to the first factor, the court finds that petitioner has a strong private interest in her

19  continued release.  As noted above, petitioner was released in 2018 prior to being re-detained in

20  2025.  The length of time of her release strengthens petitioner's interest in her continued release.

21  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Moreover, the actions of the

22  Government in allowing Petitioner to remain in the community for over five years strengthen

23  Petitioner's liberty interest.  Governmental actions may create a liberty interest entitled to the

24  protections of the Due Process Clause."); *see also Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC,

25  2025 WL 2730235, at *5 (C.D. Cal. Aug. 26, 2025) (finding that the petitioner had a substantial

26  interest in remaining out of immigration custody because of the eight year length of her release).

27  The court concludes that consideration of the first factor therefore weighs in favor of granting

28  petitioner the relief of being provided a pre-detention hearing before an immigration judge.

1    As to the second factor, petitioner argues that the risk of erroneous deprivation is high

2    without a bond or custody redetermination hearing.  (Doc. No. 3 at 8–9.)  Several courts have

3    already found that such a risk is high in cases similar to petitioner's.  *See, e.g., Salcedo Aceros*,

4    2025 WL 2637503, at *12 (finding that the petitioner's risk of erroneous deprivation was high

5    because a bond hearing would likely reveal that the petitioner still presented no public safety or

6    flight risk); *see also Calderon*, 2025 WL 2430609, at *3 ("Where an individual has not received a

7    bond or redetermination hearing, the risk of an erroneous deprivation of liberty is high."); *Pinchi

8    v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025) (finding

9    a risk of erroneous deprivation without a bond hearing pre-detention where the petitioner was re-

10   detained after having been released on her own recognizance at the border by immigration

11   officials).  Accordingly, the court concludes that consideration of the second *Eldridge* factor also

12   weighs in favor of granting petitioner the relief she preliminarily seeks.

13   As to the third factor, petitioner argues that the government has only negligible interest in

14   re-detaining her without providing a pre-detention custody hearing.  (Doc. No. 3 at 9.)  "In

15   immigration court, custody hearings are routine and impose a minimal cost."  *Salcedo Aceros*,

16   2025 WL 2637503, at *12 (internal quotation marks omitted) (quoting *Singh*, 2025 WL 1918679,

17   at *7).  Respondents have made no argument that its interest in detaining petitioner outweighs the

18   cost of providing the additional process to which petitioner is due.  Accordingly, the court

19   concludes that the final *Eldridge* factor weighs in favor of granting petitioner the preliminarily

20   relief she seeks.

21   Therefore, the court concludes that petitioner will likely succeed on the merits of her

22   procedural due process claim that her re-detention without notice and an opportunity to be heard

23   was unlawful and that the first *Winter* factor favors granting petitioner's motion for temporary

24   restraining order.  The court therefore need not and does not address the merits of petitioner's

25   substantive due process claim.

26   **B.    Irreparable Harm**

27   Petitioner argues that she will suffer irreparable harm from her continued detention and

28   deprivation of her constitutional rights to due process in the absence of the granting of the

1  requested injunctive relief.  (Doc. No. 3 at 12–13.)  "[U]nlawful detention certainly constitutes

2  extreme or very serious damage, and that damage is not compensable in damages."  *Hernandez*,

3  872 F.3d at 999 (internal quotation marks omitted).  Likewise, "[i]t is well established that the

4  deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v.*

5  *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

6  Above, the court has concluded above that petitioner will likely succeed on the claim that her

7  continued detention is unlawful.  The court therefore also concludes that petitioner has

8  demonstrated irreparable harm as to that detention and that consideration of this *Winter* factor

9  favors granting petitioner's motion for temporary restraining order.

10  **C.    Balance of Equities and Public Interest**

11       Petitioner argues that the last two *Winter* factors—the balance of equities and public

12  interest—favor the granting of her motion for temporary restraining order.  (Doc. No. 3 at 13–14.)

13  She contends that a violation of constitutional rights through indefinite detention would cause her

14  immense harm whereas the burden on the government in releasing her would be minimal.  (*Id.*)

15       The consideration of the balance of equities and the public interest in an injunction merge

16  "[w]hen the government is a party[.]"  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

17  Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  "Just as the public has an interest

18  in the orderly and efficient administration of this country's immigration laws, the public has a

19  strong interest in upholding procedural protections against unlawful detention."  *Hoac v. Becerra*,

20  No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025) (internal

21  quotation marks omitted) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4).  Petitioner has

22  demonstrated that she will likely succeed on the merits of her unlawful re-detention claim for the

23  reasons explained above.  Therefore, the court concludes that consideration of the last two *Winter*

24  factors also favor granting petitioner's motion for temporary restraining order.

25  **D.    Status Quo**

26       "The status quo *ante litem* is the last uncontested status which preceded the pending

27  controversy."  *Hoac*, 2025 WL 1993771, at *7 (internal quotation marks and brackets omitted)

28  (quoting *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).  "A TRO

immediately releasing Petitioner is appropriate to return [her] to the status quo. . . .  That is the moment prior to Petitioner's likely illegal detention."  *Larios v. Albarran*, No. 25-cv-08799-AMO, 2025 WL 2939223, at *3 (N.D. Cal. Oct. 16, 2025).  Accordingly, the court concludes that the immediate release of petitioner on the same conditions she was subject to prior to her detention on October 27, 2025 is necessary in order to restore the status quo.

## CONCLUSION

For the reasons above,

1.      Petitioner's motion for a temporary restraining order (Doc. No. 3) is GRANTED in part as follows:

   a.      Respondents are ORDERED to immediately release petitioner from respondents' custody with the same conditions she was subject to immediately prior to her detention on October 27, 2025;

   b.      Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge where respondents will have the burden to demonstrate a change in circumstances by clear and convincing evidence;

   c.      Petitioner's request for a temporary restraining order enjoining respondents from removing her is DENIED without prejudice to a renewed and properly supported motion for temporary restraining order; and

2.      The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order; and

/////

/////

/////

/////

9

1       3.      Under the circumstances of this case, petitioner will not be required to post bond

2            pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

3     IT IS SO ORDERED.

4    Dated:   __**November 14, 2025**__

                                  _Dale A. Drozd_

5                                    DALE A. DROZD

6                                    UNITED STATES DISTRICT JUDGE